FLOUR CITY NATIONAL BANK OF MINNEAPOLIS v. JOHN M.
BAYER.[1]

May 1, 1903.

Nos. 13,402—(39).

**Conversion—Finding.**

    Action for the conversion of a quantity of wheat. *Held*, that the finding and decision of the trial court to the effect that the plaintiff was the owner of the wheat, and that it was converted by the defendant, is sustained by the evidence.

Appeal by defendant from an order of the district court for Clay county, Baxter, J., denying a motion for a new trial. Affirmed.

*C. A. Nye* and *Lewis E. Jones*, for appellant.

*Charles S. Marden* and *Charles C. Houpt*, for respondent.

START, C. J.

Action for the conversion of forty-nine hundred bushels of wheat. The complaint alleged that the plaintiff was the owner of the wheat, and that its value was $2,940; that the defendant unlawfully took and carried it away; and that the plaintiff duly demanded the return thereof, which was refused. The answer put in issue the plaintiff's title, and alleged that as sheriff of the proper county, by virtue of an execution upon a judgment duly had and recovered against the Elmwood Farm Company and C. P. Jones in favor of the Minneapolis Threshing Machine Company, the defendant duly levied upon and sold the wheat as the property of such judgment debtors, and that it was taken from the possession of C. P. Jones. The reply denied that such judgment debtors, or either of them, had any interest in the wheat, or that it was taken from the possession of either of them.

The trial court found, in effect, that the plaintiff was the owner and entitled to the possession of the wheat referred to in the complaint, which amounted to forty-five hundred ninety-nine bushels, of the value of $2,666.82; that the defendant, as sheriff, by

[1] Reported in 94 N. W. 557.

virtue of the judgment and execution alleged in the answer, seized, took, and carried it away, and refused to return it, although it was demanded by the plaintiff; and that the judgment debtors were not the owners of the wheat. As a conclusion of law, the court directed judgment for the plaintiff for the sum of $2,568.92. The defendant appealed from an order denying his motion for a new trial.

The assignments of error raise two general questions: First. Are the findings of fact sustained by the evidence? Second. Did the court err in its rulings as to admission of evidence?

1. It is the contention of the defendant that the evidence fails to show that the plaintiff was the owner of the wheat, or that it was taken from its possession; hence the defendant is in no event liable to the plaintiff for the wheat which he seized, whatever his liability may be to others. If these premises are correct, the conclusion is also right. This suggests the real question in this case: Is the finding of the court, to the effect that the plaintiff was the owner of the wheat at the time the defendant took it, sustained by the evidence? The undisputed evidence establishes these facts: In November, 1891, the Elmwood Farm Company, then known as the C. P. Jones Stock & Grain Farming Company, and C. P. Jones (hereafter referred to as the "judgment debtor"), were indebted to the Minneapolis Threshing Machine Company in a sum exceeding $1,500, for which judgment was rendered against them in favor of the machine company on September 11, 1896. Execution on this judgment was issued and delivered to the defendant as sheriff August 26, 1901, and, claiming to act by virtue thereof, he took and sold the wheat here in question. On January 18, 1893, the judgment debtors were indebted to the plaintiff in a sum exceeding $38,000 and interest. They then owned 4,700 acres of land, upon a part of which the wheat in question was raised, subject to incumbrances thereon amounting to $30,000, and the claim of the state for the unpaid purchase price for a part of the land. On the day last named they conveyed the land by warranty deed, which was duly recorded in the office of the register of deeds of the proper county, subject to incumbrances thereon, to the plaintiff. Some two years thereafter, and on January 8, 1895, the

plaintiff entered into a written executory contract with the Jones Land Association (hereafter called the "Association"), whereby it agreed to convey the land to the association upon being paid the balance of the purchase price, $70,000, in instalments, as provided in the contract, in wheat to be raised on the land, at seventy-five cents per bushel. This contract contained, with other provisions, the following:

"Possession of the lands herein described may be taken at once by the second party which hereby agrees to enter upon and farm and operate the same in a good, careful and farmer-like manner; but it is expressly understood and agreed that such possession by the second party shall be that of a tenant only and subject to the fulfilment of the undertakings to be performed by the second party, as set out in this contract. * * * No assignments, sale or sub-lease of this contract or any portion of the lands herein referred to, shall be made by the second party without the written consent of the first party; and any such sale, assignment or sub-lease without such consent, shall be absolutely void."

The association entered into possession of the land in accordance with the terms of the contract, and entered into separate subcontracts for the sale and purchase of portions of the land with eight other parties respectively. These subcontracts were all substantially alike, and provided for the payment for the land by one-half of the grain raised thereon each year, to be delivered in elevators or on cars, for the plaintiff herein, as the association might direct. They also contained this further provision:

"It being further understood and agreed, that until the delivery of said one-half of grain as aforesaid, during each and every year of this contract, the legal title and ownership of all the said grain raised during each and every year, shall be and remain in the first party [the association]."

The plaintiff consented to the making of these subcontracts, and each of them, with all rights, benefits, and privileges secured thereby, was duly assigned by the association to the plaintiff, but none of them was ever filed or recorded. The wheat in controversy was raised, after such assignments were made, by the parties with whom the subcontracts were made, on the land described therein. The half of the wheat which would belong to the cropper

upon complying with the terms of his subcontract was in each case delivered to him by the defendant after he had seized the entire mass, and such half is not involved in this action. The plaintiff duly demanded the delivery of the wheat mentioned in the complaint herein before the commencement of this action, which was refused.

There was also evidence tending to show that the consideration for the conveyance of the land by the judgment debtors to the plaintiff was the payment and satisfaction of its indebtedness against them, and that the conveyance was absolute. The defendant, however, claims that the evidence tends to show that it was the intention of the parties to the conveyance that the land should be held by the plaintiff simply as security for the payment of its debt against the judgment debtors, and, further, that the conveyance was made to defraud the creditors of the grantors. The trial court made no findings as to such claims, nor was it requested so to do, nor was the evidence such that it was bound so to do as a matter of law; hence it is unnecessary to discuss or determine the question whether there was any evidence tending to support the defendant's claims.

Recurring now to the question whether the finding of the court that the plaintiff was the owner of the wheat at the time the defendant converted it is sustained by the evidence, we are of the opinion that the question must be answered in the affirmative. The evidentiary facts we have referred to establish, prima facie, the title of the plaintiff to the wheat. It is true, as counsel for defendant claims, that the contract for the sale of the land by the plaintiff to the association gives to the latter the possession of the land as tenant, and that the contract, taken by itself, would not give to the plaintiff title to the crops to be raised upon the land, but the deed of the land to the plaintiff, the contract, the subcontracts, and the assignments thereof, when construed together, clearly vest the title and possession of the crops to be raised on the land in the plaintiff. We therefore hold that the trial court's findings of fact are amply sustained by the undisputed evidence, and its conclusion of law by the facts found.

2. The defendant further claims that the trial court erred in its rulings in the admission of evidence as to the plaintiff's ownership of the wheat. Not all of the rulings were correct, but none of them were prejudicial, for the reason that there was sufficient competent and undisputed evidence to establish the plaintiff's title.

Order affirmed.